# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

Civil Action No. 07-CV-2170

ILENE SIEMER, et al.

    Plaintiffs,

vs.

THE QUIZNO'S FRANCHISE COMPANY LLC, et al.

    Defendants.

---

### NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION

---

### DO NOT WRITE OR CALL THE COURT OR THE COURT CLERK'S OFFICE
### TO INQUIRE ABOUT THE SETTLEMENT

  A class action settlement has been reached under which your rights may be affected. You may be entitled to receive benefits under this settlement.

  This Notice of Pendency and Proposed Settlement of Class Action (the "Notice") is directed to (i) all Quiznos Franchisees who paid an Initial Franchise Fee or who were not charged an initial Franchise Fee on or before July 2, 2009 to purchase a Quiznos Restaurant to be located in the United States, the District of Columbia or the United States Territory of Puerto Rico which did not open for operation on or before that date and those Persons who have been specifically identified in paragraph 2.59 of the October 27, 2009 Class Action Settlement Agreement and Release (the "Agreement"); and (ii) all Quiznos Franchisees (including all Current Operators as defined in paragraph 2.11 of the Agreement) in the United States, the District of Columbia and the United States Territory of Puerto Rico who, at any time prior to the Preliminary Approval Date, have operated a Quiznos Restaurant pursuant to a Franchise Agreement. The Notice is not directed to those Persons excluded from the definition of the SNO Settlement Class in paragraph 2.59 of the Agreement and/or those Persons excluded from the definition of the Franchise Operator Settlement Class in paragraph 2.26 of the Agreement.

  This Notice incorporates by reference the definitions set forth in Section II of the Agreement.

  By an order dated _____ (the "Preliminary Approval Date"), the United States District Court for the Northern District of Illinois (Eastern Division) (the "Court") preliminarily approved and certified the settlement of a class action lawsuit against The Quizno's Franchise Company LLC f/k/a, The Quizno's Corporation, Quizno's Franchising LLC, Quizno's Franchising II LLC, QFA Royalties LLC, The Quizno's Master LLC, QZ Finance LLC, QIP Holder LLC, TQSC II LLC f/k/a TQSC LLC, QCE Holding LLC, QCE Incentive LLC, QCE Finance LLC, QCE LLC, American Food Distributors LLC, Source One Distribution LLC f/k/a National Restaurant Supply Distribution LLC, S&S Equipment Company LLC, Ba-Bing! LLC f/k/a Source One Systems LLC, Chain Management

Systems LLC, Kinetic Sourcing Solutions LLC f/k/a, U.S. Fulfillment LLC, Continental Lending Group LLC, CLG Leasing LLC, QAFT, Inc., Richard E. Schaden, Richard F. Schaden, Patrick E. Meyers, Steven B. Shaffer, The Cervantes Holding Company, Cervantes Capital LLC, Cervantes Master LLC, and Quiznos Finance LLC (collectively "Defendants").

You are being sent this Notice because you have been identified as being a member of the SNO Settlement Class, the Franchise Operator Settlement Class, and, in certain instances, both classes, and you may be eligible to receive benefits under this Settlement.

This Notice is not intended to, nor should it be construed as, an expression of any opinion by the Court with respect to the truth of the allegations in the various lawsuits or of the merits of the claims or defenses asserted. This Notice is simply to advise you of the terms of the Agreement and your rights in connection with the Agreement. This is not a lawsuit against you.

A full copy of the Agreement may be obtained by contacting the Third Party Class Action Administrator, Class Counsel or Defendants' Counsel at the addresses listed below. A copy of the Agreement is also available at the Settlement Website www.Qnationalsettlement.com. This Notice contains only a summary of the Agreement as preliminarily approved by the Court.

**What is this Lawsuit About?**

<u>Franchise Operator Class Action Litigation</u>

The Franchise Operator Representative Plaintiffs (defined and identified in paragraph 2.25 of the Agreement), individually and on behalf of all others similarly situated, have asserted claims against the Defendants relating to the Quiznos Sub brand ("Quiznos") based on alleged violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), the Colorado Consumer Protection Act ("CCPA"), and other laws in connection with the sale of Franchise Agreements and the alleged sale of food, supplies and equipment to Quiznos Franchisees located in the United States, the District of Columbia and the United States Territory of Puerto Rico. The Franchise Operator Representative Plaintiffs also assert claims for fraud in connection with the sale of Franchise Agreements and the preparation of franchise disclosure documents. Further, the Franchise Operator Representative Plaintiffs assert claims for breach of contract and violations of the implied covenant of good faith and fair dealing arising out of and relating to Franchise Agreements. Plaintiffs also allege that Quiznos breached its Franchise Agreement in connection with its management of an advertising fund that is partially funded by Quiznos Franchisees. All of the Franchise Operator Representative Plaintiffs' claims concern Franchise Agreements sold in the United States, the District of Columbia and the United States Territory of Puerto Rico that relate to Quiznos Restaurants that were at one time or are now currently operational. The Franchise Operator Class Representatives make no claims concerning the purchase of a Franchise Agreement for a Quiznos Restaurant that never became operational (i.e. the "SNOs").

The Franchise Operator Representative Plaintiffs' claims were initially raised in three separate lawsuits: (i) *Brunet, et al. v. The Quizno's Franchise Company LLC, et al.*, Case No. 07-CV-01717-PAB-KMT (United States District Court for the District of Colorado); (ii) *Westerfield, et al. v. The Quizno's Franchise Company LLC, et al.*, Case No. 06-C-1210 (United States District Court for the Eastern District of Wisconsin (Green Bay Division)); and (iii) *Siemer, et al. v. The Quizno's Franchise Company LLC, et al.*, Case No. 07-C-2170 (United States District Court for the Northern District of Illinois (Eastern Division)) (collectively the "Franchise Operator Class Action Litigation"), which cases will all be resolved in accordance with the Agreement. Quiznos sought to dismiss all of the claims

presently asserted against it in each case filed by the Franchise Operator Representative Plaintiffs, asserting that the claims alleged are insufficient as a matter of law and that Quiznos complied with all applicable laws. All of the motions to dismiss remained pending as of the date of the Agreement. Quiznos denies any liability, has been vigorously defending the allegations and has raised numerous defenses to the Franchise Operator Representative Plaintiffs' claims.

Neither this Court, nor those presiding over the other cases comprising the Franchise Operator Class Action Litigation, decided the merits of the Franchise Operator Representative Plaintiffs' claims as asserted in their amended pleadings or the defenses thereto raised by Quiznos. The Franchise Operator Representative Plaintiffs and Quiznos concluded that it would be in their respective best interests to enter into the Agreement in order to avoid the uncertainties of litigation and the potential lengthy appeals, particularly in complex litigation such as these cases. The Agreement provides that it will not be deemed or construed as an admission of any liability or wrongdoing by Quiznos or the Franchise Owner Representative Plaintiffs, any evidence of a breach of contract, or any violation of any statute or law.

## SNO Class Action

The SNO Representative Plaintiffs (defined and identified in paragraph 2.58 of the Agreement), individually and on behalf of all others similarly situated, have asserted claims based on alleged violations of the CCPA and other laws in connection with the sale of Quiznos Restaurants to be operated in the United States, the District of Columbia, and the United States Territory of Puerto Rico. The SNO Representative Plaintiffs also assert claims for fraud in connection with the sale of Franchise Agreements and the preparation of franchise disclosure documents. Further, the SNO Representative Plaintiffs assert claims for breach of contract and violations of the implied covenant of good faith and fair dealing arising out of and relating to Franchise Agreements. Among other things, the SNO Representative Plaintiffs allege that as a result of the Defendants' conduct, they were unable to obtain sites for their Quiznos Restaurants. All of the SNO Representative Plaintiffs' claims concern Franchise Agreements sold for restaurants in the United States, the District of Columbia and the United States Territory of Puerto Rico that did not open; the SNO Representative Plaintiffs make no claims concerning the operation of any Quiznos Restaurants. The SNO Representative Plaintiffs claimed in the SNO Class Action that they should receive a refund of Franchise Fees paid and be awarded other damages. Certain Defendants filed a counterclaim against the SNO Representative Plaintiffs for breach of their Franchise Agreements, claiming entitlement to damages for, among other things, 15 years of lost future royalties due to the failure of the SNO Representative Plaintiffs to ever open a Quiznos Restaurant. Defendants and the SNO Representative Plaintiffs deny any liability as to the respective claims asserted them, have been vigorously defending the allegations asserted against each other and have raised numerous defenses to each other's claims.

The claims of the SNO Representative Plaintiffs were previously pending in the matter of *Bonanno, et al. v. The Quiznos Franchise Company, et al.*, Case No. 06-CV-02358 (United States District Court for the District of Colorado) (the "SNO Class Action"), the Honorable Christine M. Arguello presiding. In the SNO Class Action, the court did not decide the merits of the SNO Representative Plaintiffs' claims or the defenses raised thereto by Quiznos or Quiznos' counterclaims and the SNO Representative Plaintiffs' defenses to them. However, on April 20, 2009, Judge Arguello denied the SNO Representative Plaintiffs' motion for class certification in the *Bonanno* case, ruling that the class action bar in the Quiznos Franchise Agreement is enforceable. The SNO Representative Plaintiffs and Defendants concluded that it would be in their respective best interests to enter into the Agreement in order to avoid the uncertainties of litigation and the potential lengthy appeals, particularly

in complex litigation such as this. The Agreement provides that it will not be deemed or construed as an admission of any liability or wrongdoing by Defendants or the SNO Representative Plaintiffs, any evidence of a breach of contract, or any violation of any statute or law.

**Class Definitions**

### Franchise Operator Settlement Class

The Franchise Operator Settlement Class, as preliminarily certified by the Court in its order dated _____ (the "Preliminary Approval Order"), is defined as:

> All Quiznos Franchisees (including all Current Operators as defined in paragraph 2.11 of the Agreement) in the United States, the District of Columbia and the United States Territory of Puerto Rico who, at any time prior to the Preliminary Approval Date, have operated a Quiznos Restaurant pursuant to a Franchise Agreement. The Franchise Operator Settlement Class specifically **EXCLUDES**:
>
> (a) All Quiznos Franchisees who would otherwise be Franchise Operator Settlement Class Members but who have previously asserted a claim against QCE, the QCE-Related Parties or QCE's Affiliates (or any of their predecessors, successors, or parents) and were represented by counsel which resulted in a signed settlement agreement, judgment or arbitration award;
>
> (b) All Quiznos Franchisees who timely and validly request exclusion from the Franchise Operator Settlement Class pursuant to the opt out provisions described in paragraph 12.2 of the Agreement;
>
> (c) All Quiznos Franchisees who operated a Non-Traditional Quiznos Restaurant (defined in paragraph 2.35 of the Agreement), except non-institutional owners (i.e. Quiznos Franchisees who have executed 2 or fewer Franchise Agreements) of Non-Traditional Quiznos Restaurants located in convenience stores and gas stations;
>
> (d) All Persons who are employees of QCE, the QCE-Related Parties, and the Defendants (but not excluding area directors, market captains or regional managers of QFA, QCE and/or one of the QCE-Related Parties who otherwise are members of the SNO Settlement Class and/or the Franchise Operator Settlement Class); and
>
> (e) All Quiznos Franchisees not represented by counsel against whom a default judgment was entered in favor of any of the Defendants named in the Franchise Operator Class Action Litigation.

In establishing the identity of the members of the Franchise Operator Settlement Class, the Parties will primarily rely on the records of QCE.

### SNO Settlement Class

The SNO Settlement Class, as preliminarily certified by the Court in its Preliminary Approval Order, is defined as:

> All Quiznos Franchisees who paid an Initial Franchise Fee or who were not charged an Initial Franchise Fee on or before July 2, 2009 to purchase a Quiznos Restaurant to be located in the United States, the District of Columbia or the United States Territory of Puerto Rico which did not open for operation on or before that date. The SNO Settlement Class also specifically includes (i) Barton Klatt; (ii) Megan Makki; (iii) Joe Chia; (iv) Moe Mastani; (v) Amir Milani; (vi) Negin Milani; and (vii) Sima Savarini (together with their owners, guarantors, officers, directors, predecessors, successors, representatives, heirs, executors, administrators, successors and assigns). Except as otherwise provided in this paragraph, the SNO Settlement Class specifically **EXCLUDES**:
>
> (a) The *Elhilu* Settlement Class (as defined in paragraph 2.15 of the Agreement);
>
> (b) All Quiznos Franchisees who would otherwise be SNO Class Members but who have previously asserted a claim against QCE, the QCE-Related Parties or QCE's Affiliates (or any of their predecessors, successors, or parents) and were represented by counsel which resulted in a signed settlement agreement, judgment or arbitration award;
>
> (c) All Quiznos Franchisees who timely and validly request exclusion from the SNO Settlement Class pursuant to the opt out provisions described in paragraph 12.2 of the Agreement;
>
> (d) All Quiznos Franchisees who purchased a Non-Traditional Quiznos Restaurant;
>
> (e) All Persons who are employees of QCE, the QCE-Related Parties, and the Defendants (but not excluding area directors, market captains or regional managers of QFA, QCE, and/or one of the QCE-Related Parties who otherwise are members of the SNO Settlement Class and/or the Franchise Operator Settlement Class);
>
> (f) All Quiznos Franchisees not represented by counsel against whom a default judgment was entered in favor of any of the Defendants named in the SNO Operator Class Action; and
>
> (g) All Quiznos Franchisees who received a full refund of the Initial Franchise Fee paid for a Quiznos Restaurant to be located in the United States, the District of Columbia and the United States

Territory of Puerto Rico which did not open for operation on or before July 2, 2009.

In establishing the identity of the members of the SNO Settlement Class, the Parties will primarily rely on the records of QCE.

**Settlement Terms (Franchise Operator Settlement Class)**

### *A.   Franchise Operator Class Members*

The Agreement is not an admission of liability on the part of the Parties or of the existence of any state of facts related to the claims of the Franchise Operator Class Members. By the terms of the Agreement, a member of the Franchise Operator Settlement Class is entitled to obtain a Settlement Payment which, along with the other consideration provided under the Agreement, will have the effect of resolving all past differences between the Franchise Operator Class Member and Quiznos relating to their ownership and operation of a Quiznos Restaurant in the United States, the District of Columbia or the United States Territory of Puerto Rico.

For purposes of the Settlement, the Franchise Operator Class Members are divided into three subclasses:

(a)   Current Operators (either defined in paragraph 2.11 of the Agreement or identified in paragraph 2.20 of the Agreement) who as of the Preliminary Approval Date are operating one or more Quiznos Restaurant(s) ("Franchise Operator Class I Members");

(b)   Former Operators (Transfer) who as of the Preliminary Approval Date have sold their Quiznos Restaurant(s) to another Quiznos Franchisee ("Franchise Operator Class II Members"); and

(c)   Former Operators (Closed) who as of the Preliminary Approval Date have ceased operating their Quiznos Restaurant(s) ("Franchise Operator Class III Members").

A Franchise Operator Class Member may also be a SNO Class Member (discussed below); however, a Quiznos Franchisee cannot be a SNO Class Member and Franchise Operator Class Member under the same Franchise Agreement. For purposes of determining the subclass of the Franchise Operator Class Members, the Parties shall primarily rely on the records of QCE.

Any Franchise Operator Class Member may opt out of the Franchise Operator Settlement Class, and will not be bound by it in any way, nor receive any benefits as a Franchise Operator Class Member under the Settlement. No releases will be issued to those Franchise Operator Class Members who opt out. This is addressed further below.

### *B.   Consideration to Franchise Operator Class Members*

Pursuant to and subject to the terms and conditions of the Agreement, Franchise Operator Class Members are eligible to receive the following benefits under the Agreement:

     i.   **Franchise Operator Class I Members** (who do not opt out of the Franchise Operator Settlement Class) shall receive $3,150.00 (three thousand one hundred fifty dollars) (the "Franchise Operator Class I Member Settlement Payment"). The Franchise Operator Class I Member Settlement Payment shall be made in the form of credits applied to food purchases of Franchise Operator Class I Member from QFA or QCE-Related Parties in twelve (12) equal quarterly installments over a period of three (3) years. QFA shall apply the first credit no later than thirty (30) days after the Funding Date and apply the remaining eleven (11) credits on a quarterly basis thereafter; provided, however, that QFA shall be entitled to apply the first credit on or after October 1, 2009 (prior to Preliminary or Final Approval of the Settlement) and, further, QFA shall be allowed to offset compensation to Franchise Operator Class I Members with past due Royalties, Marketing and Promotion Fees and other amounts owed by the Franchise Operator Class I Member to QFA, QCE, the QCE-Related Parties or the National and Regional Advertising Trusts which accrued on or after May 1, 2009. A Franchise Operator Class I Member who exits the Quiznos System within three (3) years of the Funding Date immediately forfeits the right to any unapplied credits. Moreover, it is expressly agreed and understood that in lieu of credits applied to food purchases of Franchise Operator Class I Member, at QFA's sole discretion, the installment amount of the Franchise Operator Class I Member Settlement Payment may be made in the form of cash payments, rent credits and/or Royalty credits to the Franchise Operator Class I Member. QCE acknowledges that the credits afforded Franchise Operator Class I Members under the Agreement shall be in addition to any and all other rebate programs existing in the Quiznos System, if any, from time to time and that the Franchise Operator Class I Member's right to the Settlement Payment shall not exclude the right to any other rebates offered by QFA, QCE or any QCE-Related Party and vice versa. Nothing in the Agreement shall obligate QFA, QCE or any QCE-Related Party to offer any rebate or similar program or to continue any such program that exists as of the Funding Date.

     ii.   **Franchise Operator Class II Members** (who do not opt out of the Franchise Operator Settlement Class) shall receive $475.00 (four hundred seventy-five dollars) (the "Franchise Operator Class II Member Settlement Payment"). The Third Party Class Action Administrator shall mail a check for the Franchise Operator Class II Member Settlement Payment to each Franchise Operator Class II Member, which shall be mailed with a Form 1099 no later than thirty (30) days after the Funding Date.

     iii.   **Franchise Operator Class III Members** (who do not opt out of the Franchise Operator Settlement Class) shall receive $1,700.00 (one thousand seven hundred dollars) (the "Franchise Operator Class III Member Settlement Payment"). The Third Party Class Action Administrator shall mail a check for the Franchise Operator Class III Member Settlement Payment to each Franchise Operator Class III Member, which shall be mailed with a Form 1099 no later than thirty (30) days after the Funding Date.

**Settlement Terms (SNO Settlement Class)**

    *A.   SNO Class Members*

The Agreement is not an admission of liability on the part of the Parties or of the existence of any state of facts related to the claims of the SNO Class Members. By the terms of the Agreement, a member of the SNO Settlement Class is entitled to obtain a Settlement Payment which, along with the other consideration provided under the Agreement, will have the effect of resolving all past differences

between the SNO Class Member and Quiznos relating to their ownership and operation of a Quiznos Restaurant in the United States, the District of Columbia or the United States Territory of Puerto Rico.

For purposes of the Settlement, a Quiznos Franchisee who is otherwise a SNO Class Member but who has a Quiznos Site (defined in paragraph 2.50 of the Agreement) as of the Preliminary Approval Date shall be considered a Current Operator and a Franchise Operator Class I Member, not a SNO Class Member. For purposes of determining the subclasses of the SNO Class Members, the Parties will primarily rely on the records of QCE.

For purposes of the Settlement, the SNO Class Members are divided into five subclasses:

(a) SNO Class Members whose Franchise Agreement Effective Date is between February 17, 2006 and July 2, 2009 ("SNO Class I Members");

(b) SNO Class Members whose Franchise Agreement Effective Date is between February 17, 2003 and February 16, 2006 ("SNO Class II Members");

(c) SNO Class Members whose Franchise Agreement Effective Date is before February 17, 2003 ("SNO Class III Members");

(d) Notwithstanding the Franchise Agreement Effective Date, SNO Class Members who signed any release in favor of any of the Quiznos Released Parties prior to the Preliminary Approval Date that did not receive economic or other consideration for the release ("SNO Class IV(a) Members"); and

(e) Notwithstanding the Franchise Agreement Effective Date, SNO Class Members who signed any release in favor of any of the Quiznos Released Parties prior to the Preliminary Approval Date that received economic or other consideration for the release ("SNO Class IV(b) Members") (SNO Class IV(a) Members and SNO Class IV(b) Members shall at times collectively be referred to in the Agreement as "SNO Class IV Members"). "Other consideration" as used in this paragraph does not include a release of claims by QCE, QCE-Related Parties or Defendants for lost future royalties. SNO Class I Members, SNO Class II Members, and SNO Class III Members cannot be SNO Class IV Members. A SNO Class Member may also be a member of the Franchise Operator Settlement Class; however, a Quiznos Franchisee cannot be a SNO Class Member and Franchise Operator Class Member under the same Franchise Agreement.

Any SNO Class Member may opt out of the SNO Settlement Class, and will not be bound by it in any way, nor receive any benefits as a SNO Class Member. No releases will be issued to SNO Class Members who opt out. This is addressed further below.

### B. *Consideration to SNO Class Members*

i. **SNO Class I Members** who elect to leave the Quiznos System and not execute an Election to Proceed as Franchisee shall be entitled to a Settlement Payment of ten percent (10%) of their Initial Franchise Fee for each executed Franchise Agreement that did not result in the SNO Class I Member commencing operations of a Quiznos Restaurant (the "SNO

8

Class I Member Settlement Payment"). The Third Party Class Action Administrator shall mail a check for the SNO Class I Member Settlement Payment to each SNO Class I Member, which shall be mailed with a Form 1099 no later than thirty (30) days after the Funding Date.

ii. **SNO Class II Members** who elect to leave the Quiznos System and not execute an Election to Proceed as Franchisee shall be entitled to a Settlement Payment of thirty-two and seven-tenths (32.7%) of their Initial Franchise Fee for each executed Franchise Agreement that did not result in the SNO Class II Member commencing operations of a Quiznos Restaurant (the "SNO Class II Member Settlement Payment"). The Third Party Class Action Administrator shall mail a check for the SNO Class II Member Settlement Payment to each SNO Class II Member, which shall be mailed with a Form 1099 no later than thirty (30) days after the Funding Date.

iii. **SNO Class III Members** who elect to leave the Quiznos System and not execute an Election to Proceed as Franchisee shall be entitled to a Settlement Payment of five percent (5%) of their Initial Franchise Fee for each executed Franchise Agreement that did not result in the SNO Class III Member commencing operations of a Quiznos Restaurant (the "SNO Class III Member Settlement Payment"). The Third Party Class Action Administrator shall mail a check for the SNO Class III Member Settlement Payment to each SNO Class III Member, which shall be mailed with a Form 1099 no later than thirty (30) days after the Funding Date.

iv. **SNO Class IV(a) Members** shall be entitled to a settlement payment of $500 (Five Hundred Dollars) (the "SNO Class IV(a) Member Settlement Payment") and **SNO Class IV(b) Members** shall be entitled to a settlement payment of $250 (Two Hundred and Fifty Dollars) (the "SNO Class IV(b) Member Settlement Payment"). The Third Party Class Action Administrator shall mail a check for the SNO Class IV(a) Member Settlement Payment and the SNO Class IV(b) Member Settlement Payment to each SNO Class IV Member, which shall be mailed with a Form 1099 no later than thirty (30) days after the Funding Date.

v. **SNO Class I Members, SNO Class II Members, and SNO Class III Members** (but not SNO Class IV Members) may elect to forego the Settlement Payment to which they are entitled pursuant to the foregoing and remain a Quiznos Franchisee. Each SNO Class Member who invokes the Election to Proceed as Franchisee shall **NOT** receive the SNO Class Member Settlement Payments to which they otherwise would be entitled under this Agreement, but instead shall remain a Quiznos Franchisee and receive the GFP and the associated GFP Credit Certificate which is a certificate providing the SNO Class Member invoking the Election to Proceed as a Franchisee with a credit equal to the amount of their Initial Franchise Fee for certain equipment and supplies needed to become operational. In addition to the entitlements set forth in paragraph 4.2 of which they will be able to take advantage, SNO Class I Members, SNO

Class II Members, and SNO Class III Members (but not SNO Class IV Members) who complete the Election to Proceed as a Franchisee shall be provided two additional forms of consideration as part of the Settlement: (a) an additional 12 months from the Funding Date to locate and secure a Quiznos Site to open and operate a Quiznos Restaurant; and (b) the GFP and associated GFP Credit Certificate. QFA shall send a GFP Credit Certificate to each SNO Class Member who invokes the Election to Proceed as Franchisee no later than thirty (30) days after the Funding Date. The certificate shall neither be valid nor redeemed until after the Funding Date. The rights and obligations of each SNO Class I Member, SNO Class II Member and SNO Class III Member who invokes the Election to Proceed as Franchisee are, and shall continue to be, governed by their Franchise Agreement; provided, however, that Section 6 or any equivalent section of the Franchise Agreement entitled "Schedule," relating to QFA's right to terminate the Franchise Agreement, shall be amended (as of the Funding Date) to read as follows:

> QFA shall be entitled to terminate the Franchise Agreement if the SNO Class Member who has invoked the Election to Proceed as Franchisee has not obtained a Quiznos Site or opened a Quiznos Restaurant within one calendar year after the Funding Date of the Settlement; provided, however, that QFA may agree in writing to extend the time beyond one (1) calendar year after the Funding Date of the Settlement for a SNO Class Member who invokes the Election to Proceed as Franchisee to open a Quiznos Restaurant so long as the SNO Class Member is, in the opinion of QFA, diligently using best efforts to look for a site.

### Additional Benefits to Franchise Operator Class Members and SNO Class Members

#### A. *Enhancements and Modifications to Quiznos Franchise System*

Quiznos agrees to make modifications to its franchise model and business practices that are intended to (i) enhance the profitability of each Quiznos Restaurant; (ii) strengthen the franchisor-franchisee relationship; and (iii) enhance franchisee prospects for success in developing a Quiznos Site and opening a Quiznos Restaurant. These enhancements and modifications include: (1) Creation of an "Advertising Advisory Council"; (2) Modifications to Quiznos' "Franchise Disclosure Document" regarding the manner in which Quiznos distributes food and other restaurant products or supplies to Quiznos Franchisees; (3) Retention of an independent agency on an annual basis to review costs of food, paper and supplies being sold to Quiznos Franchisees and to share the results of that review with Quiznos Franchisees; (4) Creation of a Quiznos-sanctioned independent franchisee association (the Independent Association of Franchisees (the "IAOF")) that would maintain its own corporate status as a not-for-profit entity with the costs of incorporation, other startup costs, and a certain portion of annual operational costs to be paid for by Quiznos; (5) Creation of a "Dispute Resolution Program," the purpose of which will be to address and resolve day-to-day operational concerns of Quiznos Franchisees; (6) Creation of a "Store Transfer Assistance Program"; (7) Development of new alternative supplier request protocols to create a formal process for alternative supplier review; (8) To the extent

Quiznos Franchisees are obligated to create a delivery program in their store, provisioning of the programmatic materials (including the "Delivery Kit") at a reduced cost; (9) Good faith consideration of all written waivers requested by Quiznos Franchisees in the "Dispute Resolution Program" with respect to any policies or procedures that mandate the maximum retail price that they may charge consumers; (10) Establishment of a "Retraining Program" available to any Quiznos Franchisee currently operating a restaurant so as to ensure that Quiznos Franchisees understand all operational guidelines and procedures; (11) The creation, update and/or maintenance of Quiznos internal monitoring systems of the SNO Pipeline; and (12) An agreement to provide each SNO Class Member who invokes the Election to Proceed as Franchisee with the name and contact information of an employee or agent who has responsibilities for site development, including finding Quiznos Sites for Quiznos Franchisees and other assistance. Each of the enhancements and modifications are more fully detailed in the Agreement at paragraph 4.2.

### B.   *Contributions to Advertising Trusts, Debt Forgiveness and Covenants Regarding Claims for Future Lost Royalties*

As part of the Settlement, Quiznos has agreed to fund the National Marketing Fund Trust and the Regional Advertising Program Trust with an additional $19,400,000 which it is otherwise not obligated to pay. Of this amount, $10,000,000 will be dedicated to Local Advertising (as defined in the paragraph 4.5 of the Agreement) during the period January 1, 2010 through December 31, 2012, with the balance to be applied to advertising initiatives set by Quiznos for the period 2009-2012. The use of these funds will be governed by Quiznos with input from the "Advertising Advisory Council" identified above.

Quiznos has also agreed to forgive certain debts owed to them by Franchise Operator Class I Members, Franchise Operator Class II Members and Franchise Operator Class III Members (who do not opt out of the Franchise Operator Settlement Class). In addition, Quiznos has agreed to release and otherwise forego prosecuting claims for future lost royalties against SNO Settlement Class Members (who do not submit an Election to Proceed as Franchisee) as well as Franchise Operator Class II Members and Franchise Operator Class III Members who do not opt out of the SNO Settlement Class or the Franchise Operator Settlement Class.

**Dismissal, Discharge and Release of All Claims**

The Agreement provides for the dismissal, with prejudice, of the four class action lawsuits identified in this Notice against Quiznos. Pursuant to paragraph 6.1(b), the Agreement provides for a broad general release of all claims of the SNO Class Members and the Franchise Operator Class Members whether or not such class members submit a claim (except those members of the SNO Settlement Class and the Franchise Operator Settlement Class who timely and properly opt out in accordance with paragraph 12.2 of the Agreement) and all claims of the Incentive Award Releasees against the Quiznos-Released Parties (defined in paragraph 2.48 of the Agreement). Specifically, in connection with the Agreement, Franchise Operator Class Members and SNO Class Members are providing a general release of all claims from the beginning of time until the date of the Final Judgment and Order against the Quiznos Released Parties. The Agreement provides for a limited Release of claims of the Quiznos Released Parties against the SNO Class Members, Franchise Operator Class Members and the Incentive Award Releasees as specifically set forth in paragraph 6.1(c) of the Agreement.

**Right to Object**

Any SNO Class Member or Franchise Operator Class Member who objects to the Settlement may appear at the hearing on the final approval of the Settlement and present any evidence or argument that may be proper. To do so, all such class members must file a Notice of Objection with the Clerk in Courtroom 2119 of the United States District Court for the Northern District of Illinois (Eastern Division), 219 South Dearborn Street, Chicago, IL 60604 no later than _____ (the "Objection Deadline") and include in their filing the following information: (i) The objector's full legal or business name, address and telephone number and the name, address and telephone number, and other contact information for his, her or its attorney, if any; (ii) A statement of the objection to the Settlement, including its legal and factual basis; (iii) Documentation supporting the objection; and (iv) A summary by the attorney for the objector of their experience with the "Class Action Fairness Act" and class action practice generally. The objecting class member must also, on or before the Objection Deadline, deliver by hand or send by U.S. First Class Mail (postage prepaid) or overnight delivery, a copy of all papers filed with the Clerk to the Third Party Class Action Administrator at the following address:

**Q National Settlement**
**c/o The Garden City Group, Inc.**
**Post Office Box 9554**
**Dublin, OH 43017-4854**
**Toll-Free Number: 800-495-7419**
**Fax Number: 206-876-5295**
**Email: Qnationalsettlement@gardencitygroup.com**
**Settlement Website: www.Qnationalsettlement.com**

Copies of all papers filed in relation to an objection shall further be delivered to Class Counsel and Defendants' Counsel at the addresses set forth below.

**Final Approval Hearing**

A final approval hearing concerning the fairness of the Settlement of the Lawsuit is scheduled for _____ beginning at _____ a.m./p.m. in Courtroom 2119 of the United States District Court for the Northern District of Illinois (Eastern Division), 219 South Dearborn Street, Chicago, IL 60604. You have the right to appear at and participate in the hearing on final approval of the Settlement. The Court, the Honorable Rebecca R. Pallmeyer presiding, has reserved the right to adjourn or reset the hearing on the final approval of the Settlement, approve the Settlement with or without modifications, enter a final judgment dismissing the Lawsuit, with prejudice, and order the payment of counsel fees and expenses, without further notice of any kind.

**Incentive Awards**

At the time of the final approval hearing, or such other time as the matter may be heard, Class Counsel will apply for approval of an additional $50,000 Incentive Award for each of the forty-five (45) Franchise Operator Representative Plaintiffs and a $12,500 Incentive Award for each Franchise Agreement signed by the SNO Representative Plaintiffs (a total of 13 agreements). These payments are in addition to any sums the SNO Representative Plaintiffs and Franchise Operator Representative Plaintiffs would otherwise be entitled to under the Agreement as members of the SNO Settlement Class and/or Franchise Operator Settlement Class. Class Counsel will also request an Incentive Award for each Quiznos Franchisee listed on Exhibit L to the Agreement based on monetary assistance in allowing

the SNO Class Action and Franchise Operator Class Action Litigation to be pursued. The total award sought is $500,000 and shall serve to partially reimburse those identified on Exhibit L for their monetary contributions to the litigation. The final amount of all Incentive Awards sought by Class Council will be determined by the Court as required by law.

**Fees and Expenses of Class Counsel**

At the time of the final approval hearing, or such other time as the matter may be heard, Class Counsel will apply for approval of their fees and expenses of litigation. The Parties to the Agreement have agreed that Quiznos will not oppose a request for approval of fees and expenses of litigation in an amount of $11,000,000, with $10,000,000 being allocated to attorneys' fees and up to $1,000,000 being allocated to actual and documented litigation costs and expenses. Class Counsel has agreed not to seek an award of attorneys' fees and costs in excess of these amounts.

Any award of attorneys' fees and expenses or Incentive Awards to the SNO Representative Plaintiffs and Franchise Operator Representative Plaintiffs will not reduce the value of benefits provided to the SNO Settlement Class and Franchise Settlement Class under the Agreement, and will be paid separately by Quiznos. Under no circumstances will you be required to pay any attorneys' fee or costs as a consequence of your decision to participate in the Settlement.

**Participation in the Settlement**

If you wish to participate in the Settlement, you will have to complete a "Settlement Payment and Election Claim Form" (the "Claim Form") electronically via the Settlement Website (www.Qnationalsettlement.com) or by mail, email or fax it to the Third Party Class Action Administrator at the address identified above on or before _____ (the "Claim Deadline"). A Claim Form is included in this package. To obtain a copy of the Agreement and any documents related to the administration of this Settlement, you may visit the Settlement Website or contact the Third Party Class Action Administrator at the address listed above.

In order to be eligible to receive the benefits under the Class Action Settlement Agreement and Release (the "Agreement"), a timely and properly completed valid Claim Form and IRS Form W-9 (or, for Puerto Rican entities, a W-8BEN) executed under penalty of perjury **MUST** be submitted to the Third Party Class Action Administrator on or before the Claim Deadline.

Within sixty (60) days of the Claim Deadline, the Third Party Class Action Administrator will send each Claimant who timely and properly submitted a Claim Form a SNO Classification Notice and/or Franchise Operator Classification Notice. The SNO Classification Notice and/or Franchise Operator Classification Notice will advise each Claimant of the Settlement Payment that he, she or it will receive under the Agreement. If Claimant disputes his, her or its classification on the SNO Classification Notice and/or Franchise Operator Classification Notice, the SNO Class Member and/or Franchise Operator Class Member must submit his, her or its challenge on or before _____, the SNO Challenge Deadline and the Franchise Operator Challenge Deadline. If Claimant disputes the rejection of his, her or its Claim Form, the Claimant must submit an Appeal Form. The Appeal Form will be provided to you with the Notice of Rejection of the Claim Form.

If Claimant does not dispute his, her or its classification on the SNO Classification Notice and/or the Franchise Operator Classification Notice, the Claimant need not take any further action and the Settlement Payment will be made to you in accordance with the terms of the Agreement and sent to the

13

address listed above on this Claim Form once the Settlement is deemed Final. However, for any SNO Class I Member, SNO Class II Member or SNO Class III Member who submits an Election to Proceed as Franchisee on this Claim Form, the Claimant must confirm his, her or its Election to Proceed as Franchisee on the Settlement Website (in accordance with the instructions provided on the SNO Classification Notice which will be provided within sixty (60) days of the Claim Deadline).

If you wish to opt out of the SNO Settlement Class or Franchise Operator Settlement Class (discussed more fully below) and forego any rights as a SNO Class Member and/or Franchise Operator Class Member (including the right to obtain a Settlement Payment), you should NOT complete a Claim Form. You should instead complete only the Opt Out Form sent along with this Claim Form.

A Claimant may be entitled to a Settlement Payment under the Settlement as a member of the SNO Settlement Class, the Franchise Operator Settlement Class, or both classes.

If the Third Party Class Action Administrator determines that your Claim Form is valid, you will receive the applicable Settlement Payment (or, in the case of SNO Class Members who select the Election to Proceed as Franchisee, a GFP Credit Certificate) in accordance with the terms of the Agreement. In the event the Third Party Class Action Administrator determines that your Claim Form is rejected, you will be advised, provided with an Appeal Form and given the opportunity to appeal the rejection of your claim.

<u>**Claim Forms received after _____ are VOID and will not be honored.**</u>

**Opting Out of the Settlement**

You will be bound by the terms of the Settlement unless you opt out. If you do not opt out, you will not in the future be able to bring or maintain any other claim or legal proceeding against the Quiznos Released Parties, including QCE, QFA, the QCE-Related Parties or the Defendants, including those which are, or could be based on, arise from or relate in any way to your operation of a Quiznos Restaurant in the United States, the District of Columbia, or the United States Territory of Puerto Rico or a Franchise Agreement for a Quiznos Restaurant which did not commence operations.

An "Opt Out Form" is included in this package. If you do not wish to participate as a member of the SNO Settlement Class and/or Franchise Operator Settlement Class you are entitled to opt out by mailing the "Opt Out Form" or a letter stating that you wish to opt out. Any request to opt out shall contain the following language:

## REQUEST TO OPT OUT

I understand that I am requesting to be excluded from the [SNO Settlement Class][Franchise Operator Settlement Class] and that by opting out, I will receive no monetary benefit as a member of the [SNO Settlement Class][Franchise Operator Settlement Class] under the Settlement. I further understand that if I am excluded from the Settlement, I may bring a separate legal action, on my own behalf, but I may receive nothing or less than what I would have received if I had filed a claim for benefits under the Settlement of this case. I also understand that to the extent I would be released under this Settlement, if I opt out, QCE LLC, the QCE-Related Parties, the Defendants in the litigation, and any or all of their Affiliates have the right to file a claim against me for such matters that may be alleged by them to be due and owing by me to either or all of them.

If you opt out, you will not be eligible for any benefits of the Agreement as a SNO Class Member and/or Franchise Operator Class Member, including any Settlement Payment owed to you, but you may instead rely upon any existing rights you may have to initiate any action you deem appropriate.

**In order to opt out of the Settlement, your "Opt Out Form" must be completed and received by the Third Party Class Action Administrator by mail, email or fax on or before _____.**

**Inquiries by Class Members**

This Notice is intended to be a summary of the terms of the Settlement. You may contact Class Counsel or Defendants' Counsel as indicated below if you have any questions. The pleadings and other papers filed in the lawsuit are also available for inspection and/or copying at the Court. **PLEASE DO NOT WRITE OR CALL THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THE SETTLEMENT.**

**Please visit the Settlement Website at www.Qnationalsettlement.com for additional information.**

If there is a conflict between this Notice, the Agreement, or the Final Judgment and Order for Dismissal, the terms of the Agreement and the Final Judgment and Order and Order for Dismissal will prevail.

<u>CLASS COUNSEL</u>

GERALD A. MARKS
JUSTIN M. KLEIN
MARKS & KLEIN, LLP
63 Riverside Avenue
Red Bank, New Jersey 07701
Phone: (732) 747-7100
Fax:   (732) 219-0625

STEPHEN E. KRAVIT
MARK M. LEITNER
JOSEPH S. GOODE
KRAVIT, HOVEL & KRAWCZYK S.C.
825 North Jefferson Street, Suite 500
Milwaukee, Wisconsin 53202-3737
Phone: (414) 271-7100
Fax: (414) 271-8135

**DEFENDANTS' COUNSEL**

FREDRIC A. COHEN
ANDREW P. BLEIMAN
CHENG COHEN LLC
311 North Aberdeen, Suite 400
Chicago, Illinois 60607
Phone: (312) 243-1717
Fax: (312) 277-3961

LEONARD H. MACPHEE
PERKINS COIE LLP
1899 Wynkoop Street, Suite 700
Denver, Colorado 80202-1043
Phone: (303) 291-2300
Fax: (303) 291-2400

Dated: October ___, 2009

By Order of The Honorable Rebecca M. Pallmeyer
United States District Court Judge